## Boenning & Co. v. Jennings

*John D. Dunmire,* for plaintiff.
*Edward H. Fackenthal,* for defendant.

LOWE, J., May 18, 1972.—Upon the death of her mother in 1961, petitioner, Helen M. Jennings, inherited in excess of $50,000 in real estate, stocks and cash. In 1964, she acquired an additional and substantial inheritance from her father. Thereafter, Mrs. Jennings entrusted her estate to her husband, John E. Jennings, an experienced and knowledgeable investor, and at his suggestion opened a short-term trading account with Boenning & Company in August, 1965.

To initiate the trading, Mr. Jennings arranged a loan through the American Trust Company, New York City. In accordance with the clearing agreement, securities purchased on account were escrowed by the bank against future payment. Requisite funds found their source either in an advancement from the bank or from accumulated profits realized in earlier transactions. Additional security to the bank was provided in the form of collateral loan notes.

By reason of the rapid turnover of securities and the tardy arrival of the certificates, the investments

so evidenced had frequently been sold previous to their delivery to the bank. In a rising market, this practice was acceptable to the bank. In March 1966, when the securities market began to deteriorate, American Trust Company notified Boenning & Company that it was refusing to cover further purchases on the account. The deficit to Boenning & Company, at that time, exceeded $30,000.

To cover this substantial loss, Boenning & Company's counsel prepared appropriate statements and a judgment note. It is to be observed these documents were prepared on the basis of information and data supplied by John E. Jennings, an employe of Boenning & Company. The instruments thus prepared were forwarded to Thomas A. Masterson, Esq., counsel for both defendants. Thereafter, their signatures were obtained upon a judgment note in the face amount of $30,500, dated April 12, 1966, and payable one year from date. Judgment was entered on the note April 14, 1966, in the Office of the Prothonotary of Montgomery County at Norristown.

In 1968, Boenning & Company demanded payment of the note. The parties discussed and negotiated the demand, but no definitive agreement was concluded. Finally, on July 3, 1970, convinced of the futility of further negotiation and after giving due notice to Helen M. Jennings, Boenning & Company filed a praecipe for a writ of execution upon realty situate in this county and titled in her name alone.

The writ of execution, unlike any previous precipitant in the parties' relationship, evoked an instantaneous response from Mrs. Jennings. She petitioned this court to open the confessed judgment on July 13, 1970, contending that she had a meritorious and equitable defense predicated upon Boenning & Company's alleged failures to honor Federal statutory mandate and violations of fiduciary responsibility.

Additionally, Mrs. Jennings contended she was naively innocent and unaware of the financial complexities which ultimately resulted in the loss covered by the note.

An answer to the petition to open brought the controversy to issue, and after depositions were taken, the matter was argued before the court en banc on February 28, 1972. The following day the petition to open judgment was dismissed and the rule entered thereon discharged. An appeal to the Superior Court of Pennsylvania necessitates this opinion.

This court finds it unnecessary to consider the several contentions advanced by Mrs. Jennings in support of her petition. She cannot pass beyond the threshold of this controversy because her inordinate delay clearly invokes the doctrine of laches.

". . . [A]pplication of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice . . . The question of laches is factual and to be determined by an examination of the circumstances": Holiday Lounge, Inc. v. Shaler Enterprises Corporation, 441 Pa. 201, 205 (1971), quoting with approval from Wilson v. King of Prussia Ent., Inc., 422 Pa. 128, 133 (1966); Siegel v. Engstrom, 427 Pa. 381 (1967).

Mrs. Jennings is a high school graduate and attended college and a business school. Her relationship with her husband, a man of considerable experience in the world of investment and finance, is a harmonious one. She lives in a world of financial substance: The Philadelphia Country Club, private school education for her children, winter vacations and luxurious social amenities. She has been counseled

by an able and experienced lawyer.* Throughout the several years of prosperity and growth in the securities market that preceded execution of the judgment note in question, Mrs. Jennings never suffered from her self-professed innocence. Neither did her pocketbook. The delay of more than four years in seeking to open the judgment, under the circumstances, inevitably leads this court to conclude Mrs. Jennings is guilty of a want of due diligence to the prejudice of Boenning & Company.

"Where one delays in asserting a defense to an obligation evidenced by a judgment entered on a note for an extended period of time without reasonable explanation of the delay, there is an inference that the defense is not presented in good faith . . ."! Carlson v. Sherwood, 416 Pa. 286, 288 (1965). See also Horn v. Witherspoon, 327 Pa. 295 (1937). As Justice Drew, later Chief Justice, once observed, "The doctrine of laches has been held applicable to petitions to open judgments by confession as it is to other equitable proceedings . . .": Id., 297; Blume v. Landsberg, 45 D. & C. 2d 506, 89 Montg. Co. L. R. 246 (1968). In Steigelman v. Sciotto, 388 Pa. 113 (1957), the Supreme Court refused to open a judgment after a three-year delay because petitioner had "not explained his delay." Such is the case here.

The only appellate court authority seemingly contrary to that advanced in the next preceding paragraph is Jamestown Banking Company of Jamestown, to use, v. Conneaut Lake Dock and Dredge Co. et al., 339 Pa. 26 (1940), wherein the opening of a judgment was affirmed upon appeal despite a four-year delay. However, it is to be observed that the Supreme Court was very careful to observe that its decision was

---

* The Hon. Thomas A. Masterson is now a judge in the United States District Court for the Eastern District of Pennsylvania.

538

grounded upon petitioner's reasonable belief that he would not be held individually responsible on the note which he had not executed and concerning which he had not given authority or consent to his partners.

The principles of law and authorities cited above, in concert with the facts of this controversy as established by the pleadings and depositions, compel this court to conclude laches precludes the relief Mrs. Jennings seeks. She was aware of the debt and of the financial transactions which gave rise to it. The note was executed by her and her husband in March 1966, with the advice and assistance of counsel. Her cultural, social, economic and educational backgrounds belie her protestations of innocence. Mrs. Jennings' contention that her husband deluded her into believing Boenning & Company would not seek to enforce collection of the obligation is unequivocably countered by the record which clearly establishes efforts to collect on the note in 1968 and 1969. After procrastinating four years, petitioner took only 10 days to move after the writ of execution was issued. She has awakened too late.