391 A.2d 614

**Herman C. STRICKLER and Pauline Strickler, Appellants,**

v.

**UNITED ELEVATOR CO., INC., Appellee,**

**N. P. S. S. Corporation, and Westinghouse Electric Inc., and Pennsylvania Real Estate Investment Trust.**

Superior Court of Pennsylvania.

Argued March 28, 1978.

Decided July 12, 1978.

Thomas J. McCormack, Philadelphia, for appellants.

T. Thomas, with him Daniel T. McWilliams, Philadelphia, for appellee, United Elevator Co., Inc.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in striking the default judgment against appellee. We agree and, therefore, reverse the order of the lower court.

On May 5, 1975, appellants filed a summons in trespass and assumpsit against United Elevator Co., Inc., appellee, Westinghouse Elec. Corp., and Pennsylvania Real Estate Investment Trust (hereinafter Pennsylvania). Appellants sought damages for personal injuries caused by appellant Strickler falling while entering an elevator in his residence. On October 20, 1975, appellants served interrogatories on United, Westinghouse, and Pennsylvania and directed that they be answered within 20 days of service. No defendant filed an answer. By letter dated December 5, 1975, appellants notified all three defendants of their intention to initiate sanction procedures pursuant to Philadelphia Local Civil Rule 4005*(d) [1] (now renumbered 145). Attached to the

1. Rule 4005*(d) provides, in pertinent part, as follows:
"If the adverse party fails to file of record answers to the interrogatories within the time period required by this Rule . . . the Prothonotary shall, on praecipe and certification of service, and upon ten days notice by the party filing the interrogatories, enter an interlocutory order requiring the adverse party to file answers within thirty days of the date of the order, and providing for sanctions as hereinafter set forth.
"This order shall become final at the expiration of the interlocutory period, upon filing of a supplemental praecipe and certification of service; unless prior to the expiration of the interlocutory period the party required to answer the interrogatories files a motion for an extension of this time limit. Such motion shall be disposed of by an appropriate order of the Civil Motion Court.
"The interlocutory order of the Prothonotary setting forth sanctions as provided herein, shall be as follows:

letter were copies of (1) a notice of intention to file a praecipe for an interlocutory order, (2) a certification of service of the notice of intention to file a praecipe and an interlocutory order, (3) a praecipe for an interlocutory order, and (4) an interlocutory order. On December 16, 1975, the prothonotary entered an interlocutory order directing United, Westinghouse, and Pennsylvania to file answers to the interrogatories within 30 days from the date of service of the order. On December 29, 1975, Westinghouse and appellants stipulated that the interlocutory period for Westinghouse would be extended to February 2, 1976.

None of the defendants filed answers. On January 19, 1976, appellants filed a supplemental praecipe directing the prothonotary to enter a final order of judgment by default. On the same date, the prothonotary entered an order of judgment by default as to liability against United and Pennsylvania.

On January 20, 1976, Pennsylvania filed answers to interrogatories, and, on February 27, 1976, Pennsylvania filed a petition to strike and/or open the judgment. United also filed a petition to strike and/or open the judgment. United asserted that appellants failed to notify it properly under Local Rule 4005*(d) and, that the local rule is in direct contravention of Rule 4019 of Pa.R.Civ.P.,[2] thus, nullifying

"(1) As to defendant, defendants, or additional defendants, an order entering judgment as to liability in favor of the party filing the interrogatories against the non-answering party who shall be precluded from the entering of a defense and the introduction of evidence at the time of trial relating to the subject matter of the unanswered interrogatories; . . .

"Wherever a praecipe is required herein, it shall be filed by the party filing the interrogatories."

2. Pennsylvania R.Civ.P. 4019 provides in part as follows:
"(a) The court may, on motion, make an appropriate order if
"(1) a party wilfully fails to file answers or sufficient answers to written interrogatories served under Rule 4005;

"(c) The court, when acting under Subdivision (a) of this rule, may make
"(1) an order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the

the judgment. On May 20, 1976, the court, per Judge LAGAKOS, dismissed both petitions. Both United and Pennsylvania filed motions requesting reargument in the lower court; however, on June 17, 1976, Pennsylvania also filed an appeal to the Superior Court. On November 18, 1976, the lower court per LAGAKOS, denied the motions for reargument. On November 30, 1976, United filed an appeal from both the May 20, 1976, and November 18, 1976 orders. Thereafter, on December 15, 1976, our Court quashed United's appeal as untimely. United did not petition for allocatur.

Although the docket entries do not reveal the precise date,[3] appellee filed a petition and rule to show cause why the court's orders of May 20, and November 18, 1976, should not be reconsidered. The motions court assigned this petition to Judge GREENBERG. While this petition was pending, our Court handed down a decision in *Strickler v. United Elevator Co., Inc.,* Appeal of Pennsylvania, 248 Pa.Super. 258, 375 A.2d 86 (1977). In *Strickler,* we reversed the order of the lower court which refused to strike off the default judgment, stating:

"We recognize that the party filing interrogatories can secure a final order after the thirty day interlocutory period has run. The question presented for our consideration is whether service of the unexecuted form of interlocutory order on December 5, 1975, was the required service of the

contents of the paper, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents, things or testimony, or from introducing evidence of physical or mental condition;

"(3) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or entering a judgment of non pros, or by default against the disobedient party or party advising the disobedience;

"(4) an order imposing punishment for contempt, except that a party may not be punished for contempt for a refusal to submit to a physical or mental examination under Rule 4010."

**3.** Judge GREENBERG stated that appellee filed this petition on January 20, 1977.

interlocutory order handed down on December 16, 1975, and commenced this thirty day period. We conclude that it did not." *Strickler,* supra, 248 Pa.Super. at 262, 375 A.2d at 88.

On August 3, 1977, Judge GREENBERG entered an order granting appellee's petition for reconsideration, vacated Judge LAGAKOS' order of May 20, 1976, and struck the default judgment. Judge GREENBERG stated that: "In light of the recent promulgation of the *Strickler* decision, we believe reconsideration is not only appropriate, but obligatory. The procedural mechanism by which Pennsylvania and United suffered default judgment has been declared to be defective, and it would be patently unfair to allow the former an opportunity to defend on the merits while the latter remains shackled to an improperly entered judgment. The interests of justice and equity require that we unlock the chains that were unlawfully placed upon United so that it may have the same full and fair opportunity to defend as has been made available to its co-defendant. So doing, we avoid the unequal treatment of similarly situated litigants that our system of justice attempts so earnestly to avoid." This appeal followed Judge GREENBERG'S order.

 Appellants argue that the lower court, GREENBERG, J., had no power to reconsider Judge LAGAKOS' May 20 order. Appellants contend that appellee is bound by this order because it failed to avail itself of the opportunity to perfect a timely appeal. Pennsylvania case law is clear that a party may waive its right to present its contentions in court. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Waiver frequently occurs when a litigant fails to follow established and approved methods of raising allegations of error in the lower court or in appellate courts. For example, waiver occurs: when counsel fails to object to the charge of the court, *Commonwealth v. Martinez,* 475 Pa. 331, 380 A.2d 747 (1977); when counsel fails to file a timely Rule 1100 motion, *Commonwealth v. Byrd,* 250 Pa.Super. 250, 378 A.2d 921 (1977); when counsel fails to raise a defense in the lower court, *Policino v. Ehrlich,* 478

Pa. 5, 385 A.2d 968 (1978); and when counsel fails to raise an issue on appeal, *Commonwealth v. Romberger,* 474 Pa. 190, 378 A.2d 283 (1977). Moreover, if a disappointed litigant fails to raise an issue on direct appeal in a court of last resort, an appellate court may invoke the waiver doctrine to preclude collateral attack, *Commonwealth v. Romberger,* supra; *Commonwealth v. Gilmore,* 464 Pa. 464, 347 A.2d 305 (1975). Even errors of constitutional dimension may be waived. *Commonwealth v. Romberger,* supra.

 In the instant case, appellee failed to file a timely appeal[4] to our Court which preserved its allegations of error. The effect of this failure was to establish the May 20 order of the lower court as a final determination of appellee's liability. Appellee is bound by the adverse decision of May 20, because it did not avail itself of the opportunity to present the issues to our Court for review on the merits. Having failed to follow established procedures for appellate review, appellee waived any right it may possess to have its contentions reconsidered in a collateral attack. To uphold appellee's attempt to circumvent the decision of our Court would undermine the validity of the appellate process and permit a party to escape the procedural requirements of perfecting an appeal. Consequently, we hold that Judge GREENBERG'S order of August 3, 1977, has no validity.

 Appellee argues that the judgment is void and, therefore, can be attacked at any time. It is true that laches does not run against a void judgment, and, that such a judgment must be stricken without regard to passage of time. *Haverford Twp. Sch. Dist. v. Herzog,* 314 Pa. 161, 171 A. 455 (1934); *Romberger v. Romberger,* 290 Pa. 454, 139 A. 159 (1927); *Pa. Dept. of Environmental Resources v. Allias,* 20 Pa.Cmwlth. 222, 341 A.2d 226 (1975). However, in each case cited, although there was a lapse of time between the entry of the judgment and the party's motion to strike, the

---

4. Pa.R.App.P. 903(b) establishes the time for appeal. Untimely appeals raise jurisdictional questions and must be quashed. *Provident National Bank v. Rooklin,* 250 Pa.Super. 194, 378 A.2d 893 (1977), allocatur refused, December 12, 1977.

petition to strike was the *first* time that any party attacked the judgment. No case holds that a party may bring successive motions to strike before different courts until he is victorious. In the instant case, appellee filed a motion to strike in a court with jurisdiction over both the subject matter and the parties. In the motion, appellee argued that the judgment was void because of the conflict between Philadelphia Local Rule 4005*(d) and Pa.R.Civ.P. 4019. The court refused to strike the judgment as void. This refusal constituted a final, appealable order. Appellee did not file an appeal within 30 days of the judgment.[5] Having failed to preserve his contentions for appellate review, appellee is now bound by the prior decision.

Appellee also argues that the lower court, GREENBERG, J., retained the power to reconsider the original order; it cites *Smith v. Dale*, 405 Pa. 293, 175 A.2d 78 (1961); and *Home Bldg. & Loan Assoc. v. Houlihan*, 373 Pa. 43, 95 A.2d 189 (1953). Both *Smith* and *Houlihan*, ". . . hold only that the *failure to appeal* does not prevent the court of original jurisdiction from retaining the power to revoke or modify a decision denying a petition to open." *Scharfman v. Phila. Transport Co.*, 234 Pa.Super. 563, 573, 340 A.2d 539, 544 (1976) (Emphasis added). Once again, appellee's factual pattern is one stage removed from the cited cases. Instantly, the lower court, per LAGAKOS, denied appellee's motion to strike and refused to grant reconsideration. Appellee took an appeal to our Court. After our Court's disposition appellee petitioned the lower court for the *third* time in a petition *for reconsideration.* No case supports the proposition that the lower court retains the power to reconsider such a petition *after an appeal has been taken,* nor does case law permit successive review of the same petition. See, e. g. *Sorken v. Epstein*, 375 Pa. 636, 101 A.2d 380 (1954); *Friel v. Beadle*, 320 Pa. 204, 182 A. 517 (1936); *Beaver Valley Water*

---

5. Appellee did file a petition for reconsideration with the lower court. However, the lower court must grant reconsideration within 30 days in order to toll the appeal period. See Pa.R.App.P. 1701 and *Provident National Bank v. Rooklin*, 250 Pa.Super. 194, 378 A.2d 893 (1977), Allocatur Refused December 12, 1977.

*Co. v. Pennsylvania P.U.C.*, 140 Pa.Super. 297, 14 A.2d 205 (1940).[6]

Accordingly, we find that the lower court erred in reconsidering Judge LAGAKOS' May 20, 1976 order refusing to strike the default judgment against appellee. Order of August 3, 1977, reversed and order of May 20, 1976, reinstated.

JACOBS, President Judge, and PRICE, J., concur in the result.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

Under the majority's reasoning, the following might occur: (1) A party waits 40 days, without appealing; the party *may* ask the lower court to reconsider its decision, and the court may do so, change its mind, and decide in the party's favor. (2) A party waits 40 days, does appeal, and the appeal is quashed as untimely; now, according to the majority, the party may *not* ask the lower court to reconsider its decision. I cannot join this reasoning; it depends upon giving legal effect to an action—the untimely appeal—that was a nullity. Nevertheless, I agree with the majority's result, which I reach as follows:

On January 19, 1976, the Stricklers got a judgment against Pennsylvania and United for failure to answer interrogatories. Pennsylvania and United each filed a petition to strike or open the judgment. On May 20, 1976, Judge LAGAKOS dismissed both petitions. Pennsylvania filed a timely appeal on June 17, and won. *Strickler v. United Elevator Co. et al.*, 248 Pa.Super. 258, 375 A.2d 86 (1977). United chose a different course: it filed a petition with Judge LAGAKOS, asking him to reconsider, and banked everything on the outcome, letting the appeal period expire.

**6.** Because we reject appellee's argument for the reasons stated in the text, we do not consider the question of whether a party has the right to reconsideration of the order *denying* a petition to strike or open for an indefinite time or whether he is foreclosed by his failure to appeal within 30 days and the court's failure to grant reconsideration pursuant to a petition for reconsideration filed within 30 days.

On November 18, 1976, Judge LAGAKOS denied United's petition to reconsider. United's appeal from that denial was, of course, untimely, and was therefore quashed. Legally, it was a nullity. In reasoning through our decision, therefore, we should proceed as though it had never occurred. So proceeding, one sees that the question presented is this: On November 18, 1976, when Judge LAGAKOS denied its petition to reconsider, did United have any form of relief left? United thought so: it filed a second petition to reconsider. This petition was assigned to Judge GREENBERG.

At this point it is important to make a procedural comment. Sometimes it is said that one Common Pleas judge may not reverse the decision of another Common Pleas judge of "concurrent jurisdiction." For example, if Judge X rules *before* trial that evidence should not be suppressed, Judge Y may not *at* trial reverse and order suppression. *Commonwealth v. Washington*, 428 Pa. 131, 236 A.2d 772 (1968). We do not have such a situation here. Both Judge LAGAKOS and Judge GREENBERG represented "the motions court." The question presented by this case would not be different if there had been no change of judicial assignment, and United's second petition to reconsider had therefore been assigned to Judge LAGAKOS.

Upon receiving the second petition, Judge GREENBERG was of the opinion that he had the power to grant it; and he did. In my opinion, this was error; I think Judge GREENBERG should have ruled that he had no power to grant the petition because it raised precisely the same question as had been presented by the first petition to reconsider, assigned to and denied by Judge LAGAKOS.

When the first petition to reconsider was assigned to Judge LAGAKOS, *he* had the power to grant it. *See Smith v. Dale*, 405 Pa. 293, 295, 175 A.2d 78, 79 (1961):

Under the Act of May 20, 1891, P.L. 101, § 1, 12 PS § 1100, in all cases involving the application for the opening, vacating and striking off of judgments of any kind, a party aggrieved by the decision of the court may

appeal at that stage of the proceeding. If no such appeal is taken and the judgment involved is one entered by amicable confession, upon warrant of attorney *or by default*, the order opening the judgment or *discharging the rule to open* is interlocutory in nature, rendered in an equitable proceeding and may be fully reviewed by the court at a subsequent term. Under such circumstances the discharge of the rule to open judgment will not prevent the court from entertaining a renewal of the application to open at a subsequent term. See, *Home B. & L. Ass'n. v. Houlihan*, 373 Pa. 43, 95 A.2d 189 (1953); *Markofski v. Yanks*, 297 Pa. 74, 146 A. 569 (1929); *Trescott v. Co-operative Building Bk.*, 215 Pa. 438, 64 A. 630 (1906) and *Kozuhowski & Reuss v. Snigel & Snigel*, 90 Pa.Super. 75 (1927). The rule against opening, amending or vacating a judgment after the expiration of the term does not apply to interlocutory orders or to judgments by default. See, *Riegel v. Wilson*, 60 Pa. 388, 394 (1869); *Breden v. Gilliland*, 67 Pa. 34 (1871). Therefore, the court en banc had the power and authority to fully review the order discharging the rule to show cause and under the facts such action was clearly indicated.

However, when the second petition to reconsider was assigned to Judge GREENBERG, he did *not* have the power to grant it. That power was denied him by the principle of *res judicata.* The correctness of this conclusion may be seen by examining *Greenfield & Co. v. Roberts*, 135 Pa.Super. 328, 5 A.2d 642 (1939), which depended in turn upon *Ahl, to the use of Long v. Goodhart*, 161 Pa. 455, 29 A. 82 (1894).

In *Greenfield* the facts were these: On February 11, 1937, the defendant obtained a rule to show cause why, *inter alia*, a judgment should not be stricken or opened. On June 22, the lower court discharged the rule. On August 31, the defendant obtained a second rule to show cause why the judgment should not be opened. On June 3, 1938, the lower court discharged this rule; the court's reason for this action was that "it felt 'compelled to discharge the rule on the technical ground of res adjudicata.'" 135 Pa.Super. at 331,

5 A.2d at 644. In support, the court relied upon *Ahl,* stating:

"In *Ahl, to the use of Long, v. Goodhart et al.,* 161 Pa. 455, 29 A. 82, the Supreme Court held, that where a rule to open a confessed judgment has been discharged, the defendant cannot subsequently, on a scire facias to revive the judgment, set up as a defense the same matters that were passed upon by the court on the rule to open the judgment. Such matters are res adjudicata. In enunciating this rule the court said: 'The principle of the cases is that a party who has submitted his alleged grievance to a court of competent jurisdiction and has had the same adjudicated, has had his day in court, and cannot be again heard, as to the same matters, in another form of proceeding.' Here the defenses offered are the counterpart of those set out in the first petition to open the judgment. Defendant, having had his day in court, cannot subject the plaintiff to the trouble and expense of again defending the same rule, nor will he be permitted to burden the court with the same matter twice. Defendant's remedy was to have appealed from the action of the court in dismissing the first rule on June 22, 1937, as provided by the Act of May 20, 1891, P.L. 101, [12 P.S. §§ 1100, 1164.] For the above reason the rule to open the judgment was discharged."

135 Pa.Super. at 331–32, 5 A.2d at 644.

As it happened, on appeal this court reversed. The only reason for reversal, however, was that this court's review of the record indicated that the lower court, in discharging the first rule to show cause, had in fact not

[given] any consideration to the question of opening the judgment on the merits, as was asked for in the petition of August 31, 1937 [the second rule to show cause] . . .

135 Pa.Super. at 333, 5 A.2d at 645.

It followed,

therefore, that the matters raised by the [second] rule to open the judgment and let defendant into a defense were

not passed upon or decided by the court in discharging the prior rule on June 22, 1937 and should be considered under the present [second] rule.

135 Pa.Super. at 334, 5 A.2d at 645.

Here, "the matters raised by" the first petition to reconsider were "passed upon or decided by the court [Judge LAGAKOS]." Accordingly, the principle of *res judicata* did apply, and Judge GREENBERG should have ruled that he was compelled to dismiss the second petition to reconsider.

For these reasons I concur in the majority's order reversing Judge GREENBERG's order of August 3, 1977, and reinstating Judge LAGAKOS' order of May 20, 1976.